UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DEANDRE BLAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:18-cv-00017 |
| | ) CHIEF JUDGE CRENSHAW |
| TENNESSEE DEPARTMENT OF | ) |
| CORRECTION, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Deandre Blake, a state inmate currently confined at the West Tennessee State Penitentiary in Henning, Tennessee, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, naming as defendants the Tennessee Department of Correction ("TDOC"), the Turney Center Industrial Complex ("TCIX"), Lieutenant Billy Rosson, and Dustin Mackin. (Doc. No. 1.) Plaintiff also refers to the following individuals as defendants in the complaint: inmate Cameo Biggs, inmate Chris Kirkendoll, Warden Kevin Genovese, TDOC Commissioner Tony Parker, Governor Bill Haslam, Disciplinary Board Member Sgt. Thomas, two unnamed members of the disciplinary board, and unnamed TCIX staff members. Plaintiff also filed an application to proceed *in forma pauperis*. (Doc. No. 2.)

I.    **Application to Proceed as a Pauper**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, Plaintiff's application (Doc. No. 2) will be granted. Plaintiff nonetheless remains responsible for paying the

full filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff will therefore be assessed the full $350.00 filing fee, to be paid as directed in the accompanying Order.

## II.     Initial Review

The Court is required to conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must construe a *pro se* plaintiff's complaint liberally, United States v. Smotherman, 838 F.3d 736 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)).

### A.     Factual Allegations

On September 26, 2017, Plaintiff was confined at the Turney Center Industrial Complex. (Doc. No. 1 at 5.) Between 6:30 and 7:30 P.M. that evening, two fellow inmates—Cameo Biggs and Chris Kirkendoll—attacked Plaintiff in his cell. (Id.) Biggs had a box cutter. (Id.) Both inmates were housed on the first floor of TCIX and were "supposed to be on lock down." (Id.) Plaintiff alleges that unnamed TCIX staff members responsible for "the pod" failed to do proper security checks. (Id. at 10.) Plaintiff had previously asked to be held in "safekeeping" or "protective custody," but all prison officials, including Defendant Mackin, denied his requests. (Id. at 10–12.)

Biggs dropped the box cutter during the attack, and Plaintiff picked it up and cut him. (Id. at 5.) The attackers held Plaintiff down, knocked one of his teeth out, and ran out of Plaintiff's cell. (Id.) Plaintiff's cellmate then tried to help Plaintiff by locking him in the cell. (Id.) Biggs and

Kirkendoll later “jumped” Plaintiff’s cellmate on the first floor of TCIX. (Id.) Because of the attack, Plaintiff received medical assistance to his face, mouth, arms, and hands. (Id.)

Plaintiff’s cellmate told a correctional officer that Plaintiff needed help, and a “side pod” correctional officer ordered the unit “locked down.” (Id. at 6.) Plaintiff was placed in “the hole” pending an investigation. (Id.) Some hours later, both attackers and Plaintiff’s cellmate were placed in “the hole” with Plaintiff. (Id.)

Plaintiff alleges that Defendant Mackin prepared three false disciplinary reports related to the attack, and that Defendant Rosson approved them. (Id. at 6-7.) These reports are attached to the complaint. The first disciplinary report charges Plaintiff, Plaintiff’s cellmate, and both attackers with “participating in security threat group activity.” (Id. at 6, 22.) The second disciplinary report states that Plaintiff assaulted Biggs with a box cutter and charged Plaintiff with “possession of a deadly weapon.” (Id. at 6, 25) The third disciplinary report charges Plaintiff and Biggs with assault, stating that Biggs entered Plaintiff’s cell and “began to physically assault” Plaintiff, at which point Plaintiff “retrieved a box cutter” and “began to assault and stab” Biggs. (Id. at 7, 28.) This report states that Plaintiff “received bruising to multiple area[s] of his body” and Biggs sustained “puncture wounds to his facial area as well as his left arm which required sutures.” (Id.)

Plaintiff had a disciplinary board hearing, and there are three disciplinary report hearing summaries attached to the complaint. (Id. at 7–8, 30–35.) These summaries are signed by Disciplinary Board Member Sgt. Thomas and two unnamed members of the disciplinary board.[1] (Id. at 9, 31, 33, 35.) The second page of each summary includes the instruction “Attach CR3171 Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights.” (Id. at

[1] The signature of one unnamed disciplinary board member appears to read “Crystal Breece,” while the other signature is not legible. (Doc. No. 1 at 31, 33, 35.) Nonetheless, the signatures of the two unnamed disciplinary board members appear to be the same on all three of the disciplinary report hearing summaries and the administrative segregation placement form. (Id. at 31, 33, 35–36.)

31, 33, 35.) The "waiver" section of each summary allows an inmate to agree to waive the right to 24-hour notice, the right to have the reporting official present, and the right to call witnesses on his behalf. (Id. at 30, 32, 34.) On all three of Plaintiff's summaries, the "inmate signature" line for these waivers reads, "signed 3171." (Id.) These summaries also reflect that Plaintiff pleaded guilty to all of the disciplinary charges. (Id. at 30–35.) Plaintiff alleges that he did not sign any of the waiver sections, and that he did not plead guilty to any of the disciplinary charges. (Id. at 7–8.)

There is also an administrative segregation placement form attached to the complaint. (Id. at 8–9, 36.) This form is signed by Warden Kevin Genovese, Disciplinary Board Member Sgt. Thomas, and two unnamed members of the disciplinary board. (Id. at 9, 36.) In the section to provide reasons for recommending administrative segregation placement, the form states, "Inmate Deandre Blake plead guilty to the disciplinary board to a class A assault on offender with a weapon . . . . Due to inmate Blakes' recent violent acts he shows a great risk to the safety and security of the institution and the board recommends he be placed on Administrative Segregation." (Id. at 8–9, 36.) On this form, there is an "X" next to the statement "inmate refused to sign." (Id. at 9, 36.)

Plaintiff alleges that the Defendants conspired to place him in administrative segregation as retaliation, and he is experiencing violent, insane, and paranoid behavior while in segregation. (Id. at 13–14.) Biggs and Kirkendoll were not placed in administrative segregation as a result of the attack. (Id. at 13.) At some point, Plaintiff was transferred to the West Tennessee State Penitentiary ("WTSP"). Plaintiff alleges that a gang is taking out orders to kill him, and that members of this gang are present at WTSP. (Id. at 17.)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court applies the same standard as

4

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    **C.    Discussion**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)).

    **1.    Improper Parties Under § 1983**

Plaintiff names the Tennessee Department of Correction as a defendant, but TDOC "is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant." Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). Likewise, as a prison facility, the Turney Center Industrial Complex "is not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." McIntosh v. Cap Brighton, No. 14–CV–11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases

5

establishing that prison facilities are inappropriate defendants under § 1983). Finally, Plaintiff alleges that fellow inmates Cameo Biggs and Chris Kirkendall attacked him in his cell, and refers to Biggs and Kirkendall as defendants throughout the complaint. "[A]n inmate[,]" however, "is not a state actor or a person acting under the color of state law for purposes of stating a claim under § 1983." Goodell v. Anthony, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001) (collecting cases). Accordingly, TDOC, TCIX, Biggs, and Kirkendall will be dismissed as defendants.

### 2. Supervisory Defendants

Plaintiff also refers to TDOC Commissioner Tony Parker and Tennessee Governor Bill Haslam as defendants, and asserts that they are subject to supervisory liability for the constitutional violations alleged in the complaint. "Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Accordingly, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Cardinal v. Metrish, 564 F.3d 794, 803 (6th Cir. 2009) (quoting Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002)). Here, Plaintiff has not alleged that Commissioner Parker or Governor Haslam engaged in any unconstitutional conduct, or that they were aware of any such conduct by the other defendants. Thus, Plaintiff fails to state a claim against Parker and Haslam, and they will be dismissed as defendants.

### 3. Failure to Protect

Plaintiff alleges that both of his attackers were "supposed to be on lock down," and that the correctional officers responsible for "the pod" failed to do proper security checks. Plaintiff also

6

alleges that he had repeatedly requested to be held in "safekeeping" or "protective custody," but all prison officials—including Defendant Mackin—denied his requests.

The Eighth Amendment protects prisoners from "cruel and unusual punishment," <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994), including the right be free "from violence at the hands of other prisoners." <u>Bishop v. Hackel</u>, 636 F.3d 757, 766 (6th Cir. 2011) (quoting <u>Farmer</u>, 511 U.S. at 833). A prisoner's claim for failing to protect him from violence by other inmates has an objective and subjective component. <u>Id.</u> at 766–67. For the objective component, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u> at 766 (quoting <u>Farmer</u>, 511 U.S. at 833). The subjective component requires the plaintiff to show that a prison official "acted with 'deliberate indifference' to inmate health or safety," <u>id.</u> (quoting <u>Farmer</u>, 511 U.S. at 834), which means that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." <u>Id.</u> at 766–67 (quoting <u>Farmer</u>, 511 U.S. at 837). Thus, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." <u>Id.</u> at 767 (citing <u>Farmer</u>, 511 U.S. at 841–42).

Here, even assuming that Plaintiff's conditions of confinement posed an objectively substantial risk of serious harm, Plaintiff's allegations do not reflect that any of the defendants had the subjective state of mind necessary for a failure-to-protect claim. First, the alleged failure of the unnamed TCIX staff members to do proper security checks does not establish that they knowingly disregarded a risk to Plaintiff. Failure to follow prison policy reflects negligence at most, not deliberate indifference. <u>Wiley v. Ky. Dep't of Corr.</u>, No. 11–97–HRW, 2012 WL 5878678, at *12 (E.D. Ky. Nov. 21, 2012) (citing <u>Gibson v. Foltz</u>, 963 F.2d 851, 854 (6th Cir. 1992)). Second, Plaintiff alleges that all prison officials—including Defendant Mackin, but presumably

7

encompassing all other defendants—repeatedly denied his requests to be held in "safekeeping" or "protective custody." These general requests for a change in custody status at the prison do not establish that the defendants knew Plaintiff faced any particular risk of harm prior to the assault. Thus, Plaintiff has failed to state a failure-to-protect claim. Because Plaintiff does not allege any other wrongdoing by the unnamed TCIX staff members, they will be dismissed as defendants.

### 4. Due Process

Plaintiff also asserts a due process claim related to his disciplinary convictions and subsequent placement in administrative segregation. According to Plaintiff, Defendant Mackin laid out disciplinary charges against Plaintiff stemming from the attack that were not consistent with what actually happened. These charges were reflected in disciplinary reports, and Defendant Rosson approved these reports. Plaintiff had a disciplinary hearing, and Plaintiff alleges that he did not waive his hearing rights or plead guilty to the charges. The summaries of the hearing, however, reflect just the opposite—that Plaintiff did waive his hearing rights, and did plead guilty to the charges. Disciplinary Board Member Sgt. Thomas and two unnamed board members signed these hearing summaries. Plaintiff was placed in administrative segregation as a direct result of these disciplinary convictions.[2] Sgt. Thomas and the two unnamed board members signed the administrative segregation placement form, and Warden Kevin Genovese approved it. Plaintiff refused to sign the administrative segregation placement form.

As an initial matter, the record reflects that Defendants Rosson and Genovese did nothing more than approve reports or forms prepared by other people. As the Sixth Circuit has explained, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail

---

[2] Plaintiff also alleges that all Defendants conspired to place him in administrative segregation as retaliation (Doc. No. 1 at 13), "[b]ut conclusory allegations of retaliatory motive" are not "'sufficient to state [] a claim under § 1983.'" See Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005) (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" Cardinal, 564 F.3d at 802–03 (quoting Combs, 3015 F.3d at 558). Here, accepting Plaintiff's allegations as true, Plaintiff does not allege that Rosson knew the disciplinary charges in the reports he approved were false. Nor does Plaintiff allege that Genovese had any knowledge that the administrative segregation placement form he approved was based on disciplinary convictions that Plaintiff did not actually plead guilty to. Thus, Plaintiff fails to allege any facts showing that Rosson and Genovese encouraged or condoned the allegedly unconstitutional conduct, and these defendants will be dismissed.

Turning to the merits of Plaintiff's due process claim, the Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, Plaintiff must show that (1) he had a protected liberty interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. Janinski v. Tyler, 729 F.3d 531, 541 (6th Cir. 2013) (citing Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)).

As a threshold matter, the Court must determine what, if any, "constitutionally protected liberty interest" is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Prisoners have a narrower set of protected interests than individuals who are not incarcerated, as they are "subject to restrictions imposed by the nature of the regime in which they have been lawfully committed." Wolff, 418 U.S. at 556 (citations omitted). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson, 545 U.S. at 221–22 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). "A state[,]" however, "may create a liberty interest through a law or regulation establishing freedom from restraint which 'imposes

9

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Grinter v. Knight, 532 F.3d 567, 574 (6th Cir. 2008) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). The Sixth Circuit has noted that that TDOC regulations establish a "liberty interest in . . . remaining free from disciplinary segregation absent specified, substantive predicates." Franklin v. Aycock, 795 F.2d 1253, 1261 (6th Cir. 1986).

Here, Plaintiff alleges that he was placed in administrative segregation as a direct result of disciplinary convictions stemming from the attack by Biggs and Kirkendoll. As the form states, the board recommended Plaintiff be placed on administrative segregation after Plaintiff "plead[ed] guilty . . . to a class A assault on offender with a weapon" because he "show[ed] a great risk to the safety and security" of the prison. (Doc. No. 1 at 36.) The form does not state, and Plaintiff does not allege, how long Plaintiff was to remain in administrative segregation due to his disciplinary convictions. The allegations, however, suggest that Plaintiff was in administrative segregation when he drafted the complaint on February 12, 2018—nearly four-and-a-half months after the board sent him there. (Id. at 17.)

Although spending four-and-a-half months in segregation alone is not an "atypical" circumstance of ordinary prison life, the lack of a definite end-point for that segregation may implicate a protected liberty interest. See Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008) (holding that a prisoner's confinement in segregation for an indefinite duration is relevant to the determining whether his conditions are "atypical and significant in relation to the ordinary incidents of prison life"); see also Bishawi v. Ne. Ohio Corr. Ctr., 628 F. App'x 339, 344 (6th Cir. 2014) (citing Wilkinson, 545 U.S. at 224) ("[P]rolonged or indefinite confinement in administrative segregation may implicate due process considerations."). Additionally, Plaintiff alleges that "placement on administrative segregation" is a "stressful way to die," and that he is

10

experiencing "violent[] and insane behavior . . . from siting on 'max or 'supermax.'" (Doc. No. 1 at 14.) These allegations, though sparse, reflect that Plaintiff may be experiencing the type of "extreme circumstances" that rise to the level of "atypical and significant" hardships. See Wilkinson, 545 U.S. at 224 (finding that conditions of indefinite assignment to a state's maximum-security prison were "atypical and significant" where prisoners were extremely isolated and faced disqualification from parole consideration).

In sum, the full nature of Plaintiff's administrative segregation is unclear from the complaint, but the Court must view such allegations in a light most favorable to Plaintiff. In so doing, the allegations reflect that Plaintiff's disciplinary convictions may have led to indefinite detention in extraordinarily harsh conditions. Therefore, the Court will not dismiss Plaintiff's due process claim for failure to assert a protected liberty interest at this juncture.

"If a prisoner establishes a protected liberty interest, the next question is whether the state afforded the inmate sufficient process." Heard v. Caruso, 351 F. App'x 1, 9 (6th Cir. 2009) (citing Wilkinson, 545 U.S. at 224). "[T]he requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" Wilkinson, 545 U.S. at 224 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (citing Morissey v. Brewer, 408 U.S. 471, 488 (1972)). Nonetheless, prisoners facing a deprivation of a protected liberty interest are entitled to "the minimum requirements of procedural due process." Id. at 558. In general, this process includes notice, a written statement of reasons for the action, and an opportunity to be heard. See id at 564–66. The opportunity to be heard must be "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552

(1965)). Additionally, the findings of a prison disciplinary board must be supported by "some evidence" in the record, recognizing that "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455–56 (1985) (citing Wolff, 418 U.S. at 562–63).

Here, Plaintiff alleges that Defendant Mackin prepared false disciplinary charges against him, and that Disciplinary Board Member Sgt. Thomas—along with two unnamed disciplinary board members—signed the disciplinary hearing summaries reflecting that Plaintiff pleaded guilty to these charges and waived his hearing rights. Yet, Plaintiff alleges that he did not actually plead guilty or waive his hearing rights. Thus, for the purposes of initial review, the Court concludes that Plaintiff has alleged sufficient facts that he did not receive the minimum process he was due. Plaintiff has, therefore, stated a procedural due process claim against Mackin, Thomas, and the two unnamed disciplinary board members.

## III. Conclusion

For these reasons, Plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) will be granted. Plaintiff's claims against Defendants TDOC, TCIX, Rosson, Biggs, Kirkendoll, Genovese, Parker, Haslam, and the unnamed TCIX staff members will be dismissed. Plaintiff's failure-to-protect claim against the remaining defendants will also be dismissed. Plaintiff's due process claim against Defendant Mackin, Disciplinary Board Member Sgt. Thomas, and the two unnamed disciplinary board members will be referred to the Magistrate Judge for further proceedings in accordance with the accompanying Order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE