IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DEANDRE BLAKE #00467449,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. 1:18-cv-00017 |
| | )     Judge Campbell / Frensley |
| **TENNESSEE DEPARTMENT OF** | ) |
| **CORRECTION, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 25. In support of their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 26), a Statement of Undisputed Material Facts (Docket No. 27), Plaintiff's Deposition (Docket No. 25-1), Certified Copies of Plaintiff's Disciplinaries and Administrative Segregation Reviews (Docket No. 25-2), and a Certified Copy of Plaintiff's Inmate Medical Records (Docket No. 25-3).

Plaintiff has not responded to Defendants' Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action alleging that Defendants violated his Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983. Docket No. 1. Chief Judge Crenshaw, in his Memorandum Opinion filed March 22, 2018, summarized the factual allegations of Plaintiff's Complaint as follows:

On September 26, 2017, Plaintiff was confined at the Turney Center Industrial Complex. (Doc. No. 1 at 5.) Between 6:30 and 7:30 P.M. that evening, two fellow inmates - Cameo Biggs and Chris Kirkendoll - attacked Plaintiff in his cell. (Id.) Biggs had a box cutter. (Id.) Both inmates were housed on the first floor of TCIX and were "supposed to be on lock down." (Id.) Plaintiff alleges that unnamed TCIX staff members responsible for "the pod" failed to do proper security checks. (Id. at 10.) Plaintiff had previously asked to be held in "safekeeping" or "protective custody," but all prison officials, including Defendant Mackin, denied his requests. (Id. at 10-12.)

Biggs dropped the box cutter during the attack, and Plaintiff picked it up and cut him. (Id. at 5.) The attackers held Plaintiff down, knocked one of his teeth out, and ran out of Plaintiff's cell. (Id.) Plaintiff's cellmate then tried to help Plaintiff by locking him in the cell. (Id.) Biggs and Kirkendoll later "jumped" Plaintiff's cellmate on the first floor of TCIX. (Id.) Because of the attack, Plaintiff received medical assistance to his face, mouth, arms, and hands. (Id.)

Plaintiff's cellmate told a correctional officer that Plaintiff needed help, and a "side pod" correctional officer ordered the unit "locked down." (Id. at 6.) Plaintiff was place in "the hole" pending an investigation. (Id.) Some hours later, both attackers and Plaintiff's cellmate were placed in "the hole" with Plaintiff. (Id.)

Plaintiff alleges that Defendant Mackin prepared three false disciplinary reports related to the attack, and that Defendant Rosson approved them. (Id. at 6-7.) These reports are attached to the complaint. The first disciplinary report charges Plaintiff, Plaintiff's cellmate, and both attackers with "participating in security threat group activity." (Id. at 6, 22.) The second disciplinary report states that Plaintiff assaulted Biggs with a box cutter and charged Plaintiff with "possession of a deadly weapon." (Id. at 6, 25.) The third disciplinary report charges Plaintiff and Biggs with assault, stating that Biggs entered Plaintiff's cell and "began to physically assault" Plaintiff, at which point Plaintiff "retrieved a box cutter" and "began to assault and stab" Biggs. (Id. at 7, 28.) This report states that Plaintiff "received bruising to multiple area[s] of his body" and Biggs sustained "puncture wounds to his facial area as well as his left arm which required sutures." (Id.)

2

Plaintiff had a disciplinary board hearing, and there are three disciplinary report hearing summaries attached to the complaint. (Id. at 7-8, 30-35.) These summaries are signed by Disciplinary Board Member Sgt. Thomas and two unnamed members of the disciplinary board. (Id. at 9, 31, 33, 35.) The second page of each summary includes the instruction "Attach CR3171 Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights." (Id. at 31, 33, 35.) The "waiver" section of each summary allows an inmate to agree to waive the right to 24-hour notice, the right to have the reporting official present, and the right to call witnesses on his behalf. (Id. at 30, 32, 34.) On all three of Plaintiff's summaries, the "inmate signature" line for these waivers reads, "signed 3171." (Id.) These summaries also reflect that Plaintiff pleaded guilty to all of the disciplinary charges. (Id. at 30-35.) Plaintiff alleges that he did not sign any of the waiver sections, and that he did not plead guilty to any of the disciplinary charges. (Id. at 7-8.)

There is also an administrative segregation placement form attached to the complaint. (Id. at 8-9, 36.) This form is signed by Warden Kevin Genovese, Disciplinary Board Member Sgt. Thomas, and two unnamed members of the disciplinary board. (Id. at 9, 36.) In the section to provide reasons for recommending administrative segregation placement, the form states, "Inmate Deandre Blake plead guilty to the disciplinary board to a class A assault on offender with a weapon . . . . Due to inmate Blakes' recent violent acts he shows a great risk to the safety and security of the institution and the board recommends he be placed on Administrative Segregation." (Id. at 8-9, 36.) On this form, there is an "X" next to the statement "inmate refused to sign." (Id. at 9, 36.)

Plaintiff alleges that the Defendants conspired to place him in administrative segregation as retaliation, and he is experiencing violent, insane, and paranoid behavior while in segregation. (Id. at 13-14.) Biggs and Kirkendoll were not placed in administrative segregation as a result of the attack. (Id. at 13.) At some point, Plaintiff was transferred to the West Tennessee State Penitentiary ("WTSP"). Plaintiff alleges that a gang is taking out orders to kill him, and that members of this gang are present at WTSP. (Id. at 17.)

Docket No. 4, pp. 2-4 (footnotes omitted).

Plaintiff sues Defendants solely in their individual capacity, seeking monetary damages and housing where he can be kept and "be at peace with the freedom of knowing his life is under good care." Docket No. 1.

Defendants filed the instant Motion and supporting materials arguing that the are entitled to summary judgment because: (1) Plaintiff has no due process rights in his initial administrative segregation placement; (2) Plaintiff has received all the process due in his continued administrative segregation placement; and (3) Defendants have no personal involvement in Plaintiff's administrative segregation status at WTSP. Docket Nos. 25-27.

For the reasons set forth below, the undersigned finds that there are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of law with regard to Plaintiff's claims. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 25) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

## II. Undisputed Facts[1]

Plaintiff is an inmate of the Tennessee Department of Correction serving a life sentence with the possibility of parole (with a parole release hearing eligibility date of March 26, 2068) upon convictions of first degree murder and voluntary manslaughter. Docket No. 25-1, Deposition of Deandre Blake ("Def. Dep."), pp. 13-14. Plaintiff has filed a § 1983 complaint alleging violations of his due process rights regarding his September 2017 prison disciplinary convictions and administrative segregation status. Docket No. 1, Complaint.

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

On September 28, 2017, at Turney Center Prison in Only, Tennessee, Defendant Dustin Mackin wrote disciplinary reports against Plaintiff for participation in security threat group activity (incident number 01294812), possession of a deadly weapon (incident number 01294823), and assault on an offender with a weapon (incident number 01294924). Docket No. 25-2, Certified Copies of Plaintiff's Disciplinaries and Administrative Segregation Reviews, pp. 1-3, 7-9, 13-15. On all three disciplinary charges at issue, Plaintiff pleaded guilty and waived his rights to a disciplinary hearing, to personally appear before the disciplinary board, to plead not guilty and have the case against him proven by a preponderance of evidence, to present his own version of the facts, and to call witnesses on his own behalf. *Id.*, pp. 4, 10, 16; Def. Dep., Ex. 2. Defendants disciplinary board chairman Timothy Thomas and disciplinary board member Crystal Breece issued disciplinary convictions and punishment of a twelve-month package restriction, a five dollar fine, and thirty days punitive segregation. *Id.*; Def. Dep., pp. 8-9.

As Plaintiff pleaded guilty to the Class A assault on an offender with a weapon, the disciplinary board recommended that he be placed on administrative segregation, as said violent acts showed a great risk to the safety and security of the institution. Certified Copies of Plaintiff's Disciplinaries and Administrative Segregation Reviews, p. 19. The Turney Center Prison Warden approved the recommendation. *Id.*

Upon completion of punitive segregation, Plaintiff was placed on administrative segregation at Turney Center Prison. *Id.*, p. 20. Counselor Shelly D. Hines visited Plaintiff on a weekly basis while he was on administrative segregation at Turney Center Prison, to monitor his well-being. *Id.*, pp. 21-24, 26; Def. Dep., p. 10.

On October 27, 2017, the Turney Center administrative segregation review board

performed a monthly review of Plaintiff's administrative segregation status and decided to continue Plaintiff on said status due to his then-recent violent acts, for the safety and security of the institution. *Id.*, p. 25.

On November 3, 2017, Plaintiff transferred to West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. *Id.*, p. 27; Def. Dep., p. 10-11. WTSP Warden Lebo approved Plaintiff's placement on administrative segregation at WTSP. *Id.*

On November 4, 2017, the WTSP administrative segregation panel decided that Plaintiff should remain on administrative segregation, based upon a review of the seriousness of the original incident and a face to face interview with Plaintiff. *Id.*, p. 28. WTSP Counselor Evelyn Maxwell continued weekly face to face interviews with Plaintiff and the WTSP panel continued to meet weekly to review Plaintiff's administrative segregation placement. *Id*, p. 30-35.

Beginning in January 2018, the face to face interviews and panel meetings have occurred monthly. *Id.*, pp. 36-49. Also, a mental health care provider visits Plaintiff on a monthly basis and completes a mental health assessment of Plaintiff. Docket No. 25-3, Certified Copy of Plaintiff's Inmate Medical Records. Plaintiff is truthful and honest with the provider. Def. Dep., p. 12. Plaintiff denies having mental health concerns, has a bright affect, is neat in his general appearance, and maintains fair to good eye contact. *Id.*

None of the Defendants were involved in the decision to place or maintain Plaintiff on administrative segregation status at WTSP. Def. Dep., pp. 12-13. Plaintiff's placement and continuing status on administrative segregation at WTSP is determined by WTSP warden and staff. Certified Copies of Plaintiff's Disciplinaries and Administrative Segregation Reviews, pp. 27-49.

Upon review of the forms showing his guilty plea and waiver of due process rights on the three disciplinary charges at issue, Plaintiff has withdrawn his § 1983 due process claim regarding the disciplinary proceedings. Def. Dep., pp. 15-16. Plaintiff continues this lawsuit on his due process claim regarding his initial and continued placement on administrative segregation. *Id.*

### III. Law and Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on February 8, 2019. Docket No. 25. Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of

> additional facts, within the time periods provided by these Rules
> shall indicate that the asserted facts are not disputed for the
> purposes of summary judgment.

Plaintiff has also failed to respond to Defendants' Statements of Undisputed Material Facts (Docket No. 27) or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded. The
> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden ... The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

    **1. Generally**

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must

demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

**D. The Case at Bar**

As discussed above, the only remaining claim before the Court is Plaintiff's due process §1983 claim regarding his initial and continued placement on administrative segregation, which he brings against Defendants solely in their individual capacity. In order to sustain his claim, Plaintiff must therefore demonstrate that each Defendant violated his constitutional rights and that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *See e.g.,* 42 U.S.C. §1983; *Brown*, 867 F.2d at 959*; Bradley,* 729 F.2d at 421. Plaintiff cannot do so.

As an initial matter, an increase in security classification does not constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to be held in a particular security classification. *See, e.g., Sandin v.*

11

*Conner*, 515 U.S. 472 (1995); *Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995). Additionally, when a liberty is at stake, "the loss of liberty must be more than inconsequential; it must extend the duration of the prisoner's sentence or be an atypical or significant deprivation." *Bishawi v. Northeast Ohio Correctional Center*, 628 Fed. Appx. 339-343-44 (6th Cir. 2014). The undisputed facts establish that Plaintiff is serving a life sentence with the possibility of parole, with his parole hearing eligibility date being March 26, 2068. Def. Dep., pp. 13-14. Accordingly, Plaintiff cannot establish that his initial placement in administrative segregation was an atypical and significant hardship within the context of his life sentence. Because a prisoner does not have a constitutional right to be held in any particular security classification and because Plaintiff's initial placement in administration segregation does not constitute an atypical and significant hardship with the context of his life sentence, Defendants are entitled to a judgment as a matter of law on the initial segregation portion of Plaintiff's claim.

Turning to the continued segregation portion of Plaintiff's claim, the analysis turns first on the duration of his confinement to administrative segregation, as prolonged or indefinite confinement in administrative segregation may implicate due process considerations; and second, on whether he has received all the process that is due, such as periodic review of his confinement status to determine whether he remains a security risk. *See., e.g., Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008); *Bishawi*, 628 Fed. Appx. at 344; *McMann v. Gundy*, 39 Fed. Appx. 208, 209-10 (6th Cir. 2002). At the time of the filing of the instant Motion and supporting materials, Plaintiff had been in administrative segregation for approximately one year and four months, during which time the undisputed facts establish that he has received ongoing reviews of his

administrative segregation status. Specifically, the undisputed facts establish that initially, Plaintiff received weekly reviews that included mental health assessments, and that since January 2018, Plaintiff has received monthly reviews, which also include mental health assessments. Certified Copies of Plaintiff's Disciplinaries and Administrative Segregation Reviews, pp. 21-26, 28, 30-35, 36-49; Def. Dep., p. 10; Certified Copy of Plaintiff's Inmate Medical Records. Under precedent in this Circuit, Plaintiff's one year and four month administrative segregation does not constitute a prolonged or indefinite duration, and the undisputed facts establish that Plaintiff has received regular review of his confinement status such that he has received all the process due. Accordingly, Defendants are likewise entitled to a judgment as a matter of law on the continued segregation portion of Plaintiff's claim.

Because the undisputed facts establish that Defendants did not violate Plaintiff's constitutional due process rights, he cannot sustain a claim under §1983 and this action should be dismissed.

## IV. Conclusion

For the reasons set forth above, the undersigned finds that are no genuine issues of material fact and that Defendants are entitled to a judgment as a matter of law with regard to Plaintiff's claims. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 25) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                 JEFFERY S. FRENSLEY
                                                 United States Magistrate Judge